IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JANE ROE, an assumed name, and JOHN ROE, an assumed name, </br></br>   Plaintiffs, </br></br> vs. </br></br> PROVIDENCE HEALTH SYSTEM - OREGON a domestic nonprofit corporation dba PROVIDENCE ST. VINCENT MEDICAL CENTER, PROVIDENCE ST. VINCENT MEDICAL FOUNDATION, a domestic nonprofit corporation; KAISER FOUNDATION HOSPITALS, a foreign nonprofit corporation; KAISER FOUNDATION HEALTH PLAN, INC., a foreign nonprofit corporation; KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST, a domestic nonprofit corporation; WOODRUFF ENGLISH, M.D., an individual employee of defendant Providence Health System-Oregon, JOHN M. BAKKE, M.D., an individual employee of defendant Kaiser Foundation Health Plan; STEVEN L. GORDON, M.D., an individual employee of defendant Kaiser Foundation Health Plan; JOHN DOE, Director of Providence St. | Civil Case No. 06-1680-KI </br></br> FINDINGS AND CONCLUSIONS |

Page 1 - FINDINGS AND CONCLUSIONS

| | |
|---|---|
| Vincent Medical Foundation, | ) |
| | ) |
| Defendants. | ) |
| | ) |

       Craig A Crispin
       Patty T. Rissberger
       Crispin Employment Lawyers
       1834 SW 58th, Suite 200
       Portland , Oregon  97221

            Attorneys for Plaintiffs

       Larry A. Brisbee
       Drake A. Hood
       Grant D. Stockton
       Matthew J. Yium
       Brisbee & Stockton
       139 N.E. Lincoln Street
       P.O. Box 567
       Hillsboro , OR 97124

            Attorneys for Defendants

KING, Judge:

      Plaintiff Jane Roe brought this case alleging disability discrimination concerning her use of a service animal, a St. Bernard dog named Cretia, when Roe is admitted as a patient to defendant Providence Health System–Oregon, doing business as Providence St. Vincent Medical Center ("Hospital").  A jury ruled in favor of the Hospital on Roe's state public accommodation disability discrimination claim, alleged under ORS 659A.142(3), finding that Roe did not prove that defendants unlawfully discriminated against her.  I make these findings and conclusions concerning Roe's Americans with Disabilities Act ("ADA") claim, alleged under 42 U.S.C. § 12182.  For the reasons below, I find that defendants did not violate the ADA by unlawfully discriminating against Roe.

Page 2 - FINDINGS AND CONCLUSIONS

**FACTS**

Roe is a person with a disability, as defined by the ADA. 42 U.S.C. § 12102(2)(A). Roe uses crutches because of the effects of a severe neurological illness, possibly multiple sclerosis. She uses a service animal, Cretia, who assists Roe by retrieving dropped objects and crutches and steadying Roe when she transfers between sitting and standing. Roe has brought Cretia to the Hospital to assist her during numerous hospital admissions, each lasting from several days to slightly longer than a week. Roe has been admitted to the Hospital more than 100 times since 1996. Cretia has accompanied Roe 29 times since the events in this case began in 2004. Roe's last admission was in June 2009. The Hospital has never denied admission to Roe or Cretia. The relationship is not peaceful, however.

Roe has insisted that Cretia remain in her room 24 hours a day. This varies from the more typical scenario of service animals, or even pets of terminally-ill patients, who visit their owners briefly and then leave the Hospital. Trained therapy animals also make short visits to Hospital patients and then leave the premises. The nursing staff is available to provide all of the physical assistance which Cretia provides to Roe.

Although Cretia is bathed once a week by a groomer, numerous witnesses testified that Cretia's presence at the Hospital causes a putrid odor to permeate the entire seventh floor on which Roe stays during her admissions. Other patients, visitors, and Hospital staff have complained of the odor. At times, other patients had to be transferred to rooms farther away from Roe's room. The odor is so strong that it takes the Hospital 24 hours after Roe checks out to clean and air out the room prior to moving another patient into it. Some Hospital staff developed allergic reactions to Cretia, in the form of both respiratory problems and skin rashes, and had to be

assigned to alternative duties. The Hospital tried to alleviate the odor and allergy problems by keeping the door to Roe's room shut and using a HEPA filter in the room. Roe resisted these efforts, complaining of claustrophobia and the noise from the filter.

Another difficulty with Cretia's constant presence was her sheer size in the small hospital room. Staff attempted to step over her, which was not always possible. At least once, Cretia growled at a nurse who was attempting to rouse Roe. The nursing staff also had difficulty trying to assist Roe getting in and out of the bed because Cretia would block the way.

When Roe was hospitalized, she was essentially bedridden. Although her husband spent many hours in Roe's room, there were also long stretches when he would leave. The Hospital was concerned that Cretia would relieve herself inside the Hospital because a handler was not available to take her outside. At times, Hospital staff took Cretia outside to relieve herself.

Further, the Hospital's epidemiologist, Dr. English, was gravely concerned about the risk of infection due to Cretia's presence. He was concerned that the putrid odor indicated that Cretia suffered from an infection which could spread in the Hospital. Veterinary records confirm that Cretia had numerous infections during the periods in which she stayed at the Hospital with Roe.

## DISCUSSION

I.  Merits of the ADA Claim

The ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.

The Hospital never denied admission to Roe and Cretia. Thus, the issue is how the Hospital and its staff treated them during the admissions.

The Hospital expressed legitimate concerns to Roe about Cretia's condition and health, the care and supervision of Cretia, and the adverse effect on patients, visitors, and staff. There was clearly an extremely offensive odor, as well as allergy issues, that required the Hospital to take steps such as screening for cleanliness and infection, closing Roe's door, and using a HEPA filter.

Roe refused to comply with legitimate requests of Hospital staff concerning Cretia. Once Dr. English was summoned to the seventh floor because of Cretia's odor. He asked Roe if Cretia could be bathed within 24 hours. Roe refused to do so because it was earlier than Cretia's regularly-scheduled weekly bath.

Another example occurred when the unit host, a woman who is less than five feet tall and has a disabled arm, asked for assistance from Roe's husband to take the heavily-loaded meal tray. The unit host could not physically step over Cretia and could not reach the bedside table to set the tray down. Roe's husband refused to help and he and Roe laughed at the host's predicament, causing the woman to cry.

I also note that there is no evidence that the use of other service animals at the Hospital caused any problems or that the owners of other service animals were concerned about their treatment at the Hospital when they used a service animal.

I conclude that defendants did not violate the ADA. Roe and Cretia were admitted each time Roe sought admission. The treatment which Roe sees as harassment, or subjecting her to less than full and equal enjoyment of the services at the Hospital, was the Hospital's attempt to accommodate both Roe and its other patients, visitors, and staff. All of the Hospital's concerns

Page 5 - FINDINGS AND CONCLUSIONS

about Cretia's odor, the risk of infection spreading from Cretia to patients, and Cretia causing allergy flare-ups in staff and patients were legitimate concerns which had to be addressed. The Hospital is charged with keeping *all* of its patients safe, providing quality health care to *all*, and providing a safe workplace for its staff. Thus, I dismiss with prejudice Roe's public accommodation claim under the ADA.

As an alternative basis for my ruling, I will determine if defendants proved the affirmative defense that Cretia created a direct threat to the health or safety of others.

The direct threat affirmative defense flows from a portion of the ADA:

> Nothing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others. The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services.

Id. § 12182(b)(3).

As I explained above, Cretia's presence created a risk to the health or safety of other patients, visitors, and staff due to her offensive odor, the possible infection risk demonstrated by the nature of the odor, the allergy concerns, her occasional guarding conduct as demonstrated by growling when staff attempted to care for Roe, and Cretia's wandering unattended when Roe's husband was not at the Hospital to handle her. I also conclude that defendants proved that the risk was significant, based on the testimony of Dr. English concerning the risk of infection and other staff who attested to the effect of Cretia's presence on other patients, visitors, and staff.

Finally, I conclude that defendants proved that the direct threat caused by Cretia's presence could not be eliminated by a modification of policies, practices, or procedures. The Hospital staff made many attempts to suggest compromises which would have lessened the effect

Page 6 - FINDINGS AND CONCLUSIONS

of Cretia's presence but Roe and her husband refused to consider any of them. In particular, Roe testified that she could not tolerate the door being closed, although prior to Roe owning Cretia, she routinely kept her door closed during hospital stays, and could not tolerate the noise of the HEPA filter.

Accordingly, defendants have proven all elements of the direct threat affirmative defense.

In summary, I conclude: (1) defendants did not violate the ADA by discriminating against Roe on the basis of her disability or her use of a service animal by failing to provide Roe the full and equal enjoyment of the services, facilities, or accommodations at the Hospital; and (2) defendants proved the affirmative defense that Cretia caused a direct threat to the health or safety of others at the Hospital.

II.   Injunction

Defendants seek an injunction preventing Roe and her husband from seeking care or treatment from the Providence Health System, Providence St. Vincent Medical Center, and all other Providence owned, maintained, or operated facilities.

Injunctive relief is proper only if monetary damages or other legal remedies do not compensate a party for its injuries. Walters v. Reno, 145 F.3d 1032, 1048 (9th Cir. 1998), cert. denied, 526 U.S. 1003 (1999). A party must establish actual success on the merits and that the balance of equities favors injunctive relief. Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 558 (9th Cir. 1990). The court has broad discretion in fashioning the appropriate remedy but an injunction must be narrowly tailored to give only the relief to which plaintiffs are entitled. Id.

The problems with Cretia accompanying Roe to the Hospital, and remaining with her 24 hours a day, began in 2004 and have continued with each admission up to the present. Although attorneys attempted to reach a resolution all could live with, they were unsuccessful.

Roe testified several times that she does not trust the Hospital staff. She took copious notes of everything the Hospital staff said when in her room. She and her husband videotaped the staff when they were attempting to perform their jobs. Staff attempts to open a dialogue were rebuffed. As one example, Roe telephoned her attorney and told a nurse that she had to speak to the attorney and not to Roe. Roe's antagonistic conduct created an atmosphere which cannot be rectified.

There was testimony that the care Roe insists on receiving may not be the best care for her chronic constipation that causes so many hospitalizations. One of Roe's treating physicians, Dr. Wise, testified that he attempted to change Roe's treatment plan to lessen the constipation. Roe refused to make a change. Comparable hospital care is available at a Kaiser facility but Roe refused to be admitted there. Comparable health care to resolve many of Roe's constipation problems is available through Kaiser's home health care staff but Roe refused to use that service. In short, Roe is unwilling to cooperate with her health care providers.

An expert witness, psychiatrist Dr. Klein, testified that Roe suffers from borderline personality disorder, which causes her to create conflicts in the Hospital. Cretia's presence is an easy way to create a conflict.

I firmly believe that Roe would cause a similar uproar when she brought any service animal to the Hospital, whether the animal was Cretia or another service animal. The owner of a service animal must cooperate to address the health and safety risks raised by the Hospital and to

Page 8 - FINDINGS AND CONCLUSIONS

allow the staff to perform their jobs. Roe refused to cooperate and made it clear during trial that she sees no need to attempt to do so.

I am unwilling to force the Hospital into an unmanageable situation. I am also unwilling, however, to prevent the Roes from seeking care at Providence facilities. The unmanageable issues are centered on Roe's use of a service animal. Without a service animal, I believe that Roe would only cause challenges to the Hospital's staff that they deal with when treating many difficult patients.

Thus, I have decided to enjoin the Roes from bringing Cretia or any other animal, whether trained as a service animal or not, into any Providence Health System facility, Providence St. Vincent Medical Center, and all other facilities owned, maintained, or operated by Providence. Roe may seek treatment at defendants' facilities but she can only come without an animal.

## CONCLUSION

The ADA public accommodation claim is dismissed with prejudice. An Injunction and Judgment will be entered separately.

IT IS SO ORDERED.

Dated this _____31st_____ day of August, 2009.

                                            /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge